**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ricky Joe NELSON, Defendant–Appellant.**

No. 02–6183.

United States Court of Appeals, Tenth Circuit.

Aug. 19, 2003.

Robert G. McCampbell, U.S. Attorney, Randal A. Sengel, Office of the United States, Attorney, Oklahoma City, OK, for Plaintiff–Appellee.

Thomas D. McCormick, Oklahoma City, OK, for Defendant–Appellant.

Before EBEL, HENRY, and HARTZ, Circuit Judges.

**ORDER AND JUDGMENT***

EBEL, Circuit Judge.

On direct appeal, defendant-appellant Ricky Joe Nelson, a doctor, challenges his

* After examining the briefs and appellate rec-   ord, this panel has determined unanimously

conviction for conspiracy to prescribe painkillers illegally in violation of 21 U.S.C. § 841(a)(1),[1] and for conspiracy to launder the proceeds of those sales outside the United States in violation of 18 U.S.C. § 1956(h).[2] First, Nelson argues that there was insufficient evidence to support the conviction against him. (Aplt. Br. at 4–7.) We examine this objection below. Second, Nelson asserts that the trial court improperly instructed the jury in stating that it was unlawful for a person knowingly or intentionally to distribute a controlled substance "outside the usual course of medical practice *or* without legitimate purpose," when this instruction should have used the word "and" instead of "or." (Aplt. Br. at 8.) But, based on an examination of the record, the trial court did properly use the word "and" in its instructions to the jury. (Jury Instructions, ROA, Doc.

No. 34, ¶¶ 6, 7 (relating that it is unlawful for a person knowingly or intentionally to distribute a controlled substance "outside the usual course of medical practice *and* without legitimate purpose") (emphasis added) [hereinafter Jury Instructions]); *see also* Conference with Counsel, ROA Vol. IV, Tr. at 405–07 (agreeing to use the word "and" in instructions to the jury). Accordingly, Nelson has no argument on appeal regarding the wording of the jury instructions, and we consider only his argument regarding the sufficiency of evidence to support his conviction. We find sufficient evidence to support the jury's verdict and AFFIRM Nelson's conviction.

We review whether evidence is sufficient to support a jury's verdict *de novo*. *United States v. Lewis*, 240 F.3d 866, 870 (10th Cir.2001) (citing *United States v. Jackson*,

---

to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. According to 21 U.S.C. § 841(a)(1): "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." In order to obtain a conviction against a physician for violation of this statute, the prosecution must show that "(1) that he distributed or dispensed a controlled substance, (2) that he acted knowingly and intentionally, and (3) that he did so other than for a legitimate medical purpose and in the usual course of his professional practice." *United States v. Rosen*, 582 F.2d 1032, 1033 (5th Cir.1978) (citing *United States v. Bartee*, 479 F.2d 484 (10th Cir.1973)).

2. According to 18 U.S.C. § 1956(h):

Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States ... with the intent to promote the carrying on of specified unlawful activity ... knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or ... to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is greater, or imprisonment for not more than twenty years, or both .... (h) [And][a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

213 F.3d 1269, 1283 (10th Cir.2000)). On appeal, however, we ask only "whether, when considered in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (citing *United States v. Hanzlicek,* 187 F.3d 1228, 1239 (10th Cir.1999)).

According to the evidence presented at trial, Nelson and his co-conspirators in Oklahoma City created a website called NationPharmacy.com through which consumers could supposedly obtain both prescription and non-prescription drugs. (Tr. 22–30.) However, almost all of the drugs distributed through the website were controlled substances, and the vast majority were hydrocodone, a powerful and addictive painkiller. (Tr. 61, 103, 159; Aple. Br. at 2.) Customers would select the drug of their choice from the website, fill out a short questionnaire that would be sent to Nelson to review, and he would sign a prescription for the medication to be filled at his co-conspirator's pharmacy. (Tr. at 22, 31–32, 102, 297.) Nelson traveled periodically to the pharmacy and signed hundreds to thousands of prescription forms at a time. (Tr. 62–65, 105.) The pharmacy paid him for each prescription written, and filled the orders at inflated prices. (Tr. 348; Aplt. Br. at 3.) At Nelson's direction, the $175,000 that he was paid for signing the prescriptions was wired to an account that he controlled outside the United States at the Bank of Antigua. (Tr. 345–48.) Nelson never once examined the patients for whom he signed prescriptions, and did not dispute that his actions in this regard were outside the bounds of accepted medical practice. (Tr. 139, 173, 179, 272, 335.) In mid-December 2000, the Oklahoma State Board of Medical Licensure and Supervision suspended Nelson's license, and, in early March of 2001, the Oklahoma State Pharmacy Board shut down his co-conspirator's pharmacy. (Aple. Br. at 5.)

After examining the evidence presented at trial in the light most favorable to the government, we conclude that a reasonable jury could have found Nelson guilty of conspiracy to prescribe prescription drugs illegally and guilty of conspiracy to launder the proceeds of those sales outside the United States beyond a reasonable doubt. *Lewis,* 240 F.3d at 870. We therefore AFFIRM his conviction for these crimes.